## JOHN HART v. H. C. FRICK COKE CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued November 1, 1889—Decided January 6, 1890.
[To be reported.]

1. An employee cannot recover from an employer for injuries received in the use of a dangerous appliance, when it was one of his own contrivance and constructed at his own suggestion, and there is no proof of a defect in the construction, or of negligence on the part of the defendant in the care of it.

2. Nor may he recover, in the absence of proof that he suggested and contrived the appliance, where the danger of using it was patent and known to him, and he might have used another arrangement provided for him, which was more safe, though not perhaps so convenient.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 170 October Term 1889, Sup. Ct.; court below, No. 29 October Term 1888, C. P. No. 2.

On July 10, 1888, John Hart brought trespass against the H. C. Frick Coke Company, to recover for personal injuries alleged to have been received in consequence of the negligence of the defendant. Issue.

At the trial on April 10, 1889, the following facts were shown:

The defendant is a corporation owning and operating a number of coal mines and coke works in Westmoreland and Fayette counties. Among its mines in the latter county is one known

as the Reist mine, at which the plaintiff was employed in the years 1886 and 1887. The coal at this mine dips into the hill and the loaded pit cars are drawn out by means of a wire cable, operated by a stationary engine located near the foot of the tipple. The plaintiff was in charge of this engine. It was a part of his duty, also, to make an inspection, once in every twenty-four hours, of all the machinery and appliances on the tipple.

When the plaintiff took charge of the engine, an open chute led from the floor of the tipple down to the boiler house below.

The coal used in the boiler fires was carried down this chute by gravity. Its vertical height was about twenty-seven feet, and its inclination was between thirty-five and forty-five degrees from a vertical line. Some time in the winter of 1886–87, the plaintiff complained that the coal would stick in the chute in consequence of water getting into it and freezing, and at his instance the company ordered a covering of boards to be placed upon the top of it. A carpenter in the company's employ accordingly made such a covering by laying boards lengthwise upon it and nailing them to braces which extended across the top. The joints between the edges of the boards were covered with strips of lumber an inch thick.

After the chute had been covered, cleats were nailed crosswise upon the strips of lumber, so as to make a sort of stairway along the chute, which was then connected with the tipple floor by a short upright ladder. This was done at the suggestion of the plaintiff, for the purpose of making a way by which he could ascend from the engine room to the floor of the tipple, when he had occasion to go there for the purpose of oiling the machinery and making his daily inspections. The circumstances leading to the making of this suggestion were stated by the plaintiff, in his testimony, as quoted in the Opinion of the Court.

Witnesses for the defendant testified that the cleats were put on the chute entirely at the request of the plaintiff and without any orders from anybody else, and that the plaintiff was warned of the danger of using the cleats and received orders from his superiors not to use them. The receipt of such warning and orders was denied by the plaintiff.

The plaintiff testified further that the use of this cleated arrangement was disagreeable and dangerous in rough weather, especially when there was snow, on account of the fact that

there was no hand railing; that several months prior to his accident he had conversations with Mullen, with Mr. Paddock, the civil engineer of the company, and with Thomas Lynch, its general superintendent, about the need of a proper stairway, and requested that such be constructed, and at least three months before the accident Lynch promised to see to it; and Mullen informed him one morning that lumber had been ordered for the construction of a good pair of stairs, which would be put up as soon as it arrived; that they were not constructed, however, and the witness continued to use the cleated way.

Testimony for the defendant tended to show that Lynch did not promise the defendant to build a stairway, but simply to see about building it; that after ordering the lumber for it he directed the civil engineer of the company to inspect the tipple and determine whether a stairway should be built; that the engineer's decision, which was against the proposal, was communicated to the plaintiff; and that this took place about eleven months before the plaintiff's injury.

There were two other ways by which the plaintiff could go upon the tipple floor. One of these was by means of a rude ladder, formed of the cleats nailed against an upright post, mentioned in the plaintiff's testimony. The use of this would be dangerous by reason of a projection over it at the top of the post. The other was by a roundabout path, which led over the tracks of the Pittsburgh, McKeesport & Youghiogheny and Baltimore & Ohio railroads, and then up a steep hillside to the pit-mouth. The use of the latter route would have required the plaintiff to travel from 100 to 110 yards to reach the tipple floor, and he testified that it would be very dangerous, both because it required the crossing of two railroads and because the path up the hill was very steep and very slippery in wet and snowy weather. There was other testimony to the effect that this path was constantly used by other persons and was safe.

The plaintiff's duty required him to be ready to draw coal out of the pit by six o'clock A. M. On the morning of November 28, 1887, before daylight, the plaintiff was descending from the tipple to the engine room with a lantern and an oil can in his hand, after having inspected the machinery as usual. There had been a slight fall of snow during the night. After coming

Charge of Court below.

backwards down the short ladder that connected the tipple floor with the cleated way on the top of the chute, he left the ladder, turned to start down on the cleats face foremost, and in taking his first step his foot slipped, and there being nothing that he could catch upon, he fell off the side of the chute and received severe injuries.

At the conclusion of the testimony the court, EWING, P. J., after stating generally the rules of law relating to negligence and contributory negligence, instructed the jury:

There is a conflict of testimony in regard to how this passage way came to be made, and it is important to ascertain what the facts are. It seems that when the plaintiff went into the employ of the defendant the coal chute was open, and alongside of the coal chute was a way of getting up by ends of boards projecting from the chute, which he climbed. He complained about the coal chute not being covered, because the coal got wet and froze and stuck, and it was covered at his request. The defendant alleges that these cleats were put on there wholly at his request and solicitation as a way for him to get up, and that it had not been that way before. He denies that. It is for the jury to remember what his testimony is, because there is a great deal of it that is not down, and could not be taken down in the way it was given, being in explanation of the photographs that were shown the witness. My recollection of his testimony is, that he says he requested them to put up stairs. If he requested these cleats to be put up in this way for him as his own choice of getting up when there was another way, that is an end of his case, even though he did afterwards urge them to put up a stairway, if it was a way of his own seeking. But if it was a way furnished by the defendant for him to go there to his work, and it was the only reasonable way, then the defendant is responsible, if it was negligence to have such a way.

The court cannot say, as a matter of law, that it was negligence on the part of the defendant, even if they did provide this way for him on their own account, and not at his request, although it does look to the court as though a very obvious way to have avoided a portion of that danger would have been to have put some sort of a guard to hold on to going up and down. Plaintiff alleges that that was the only reasonable way;

and that he had no safe way, although there were two other ways by which he could have got from this lower level of the engine house up to where the machinery of the mine was erected and which he had to look after. One was by cleats nailed to a post, as I understand, some place about the building, that the carpenters had used to climb when they were putting up the building, as no doubt all of you have seen at different times. It is alleged, and I think not contradicted, that at the top there was some projection over that post that made it apparently somewhat dangerous to get over. It is not urged that that was any safer way than the way that this man himself took. Then there was another way, it is admitted, that would be about 100 or 110 yards around, making double that distance in the round trip, that led over the track of the Pittsburgh, McKeesport & Youghiogheny road, the track of the Baltimore & Ohio road, and the switch belonging to this company, as I understand; there was a bridge crossing some run and there was a somewhat steep grade on it; how steep, it is for you to determine, that at least some people used and this plaintiff occasionally used. The plaintiff alleges that very few persons used it, and that it was very dangerous. He says there was danger in crossing the tracks, and that this path up the hill was very steep and very slippery and dangerous for him to go on. The defendant's witnesses say that it was a path traveled by a great many people; by nearly every person who had occasion to go along in that vicinity, and was used by the miners in going from their homes to the mine, and elsewhere, and they say that it was a practicable, safe way to go. That is another question for the jury that the court cannot decide, because the facts are in dispute. We say to you, though, that if the plaintiff had a reasonably safe way to go from his work at the engine up to the machinery above, even though it was 100 or 200 yards around, and he chose to take that which was evidently a dangerous route, the risk was his own and he cannot recover.

Then in regard to the conduct of the plaintiff. We are not able to say to the jury, in the conflicting testimony, and in a case where no absolute rule of conduct can be laid down, whether the plaintiff himself was guilty of negligence in this case or not, at the time at which he descended. It was the latter part of November; it was before daylight, according to

Charge of Court below.

his own story.   He undertook to go down a distance of about
48 feet along an incline where he had nothing but these cleats
nailed on without anything to hold to ; standing up and with a
lantern in one hand and an oil can in another, he undertook to
walk or run down that steep incline face foremost, and he fell
and went off.   Now while it looks to the court as though that
was taking a very great risk, yet we are not prepared to say
that as a matter of law it was negligence.   It depends some-
thing on the character and ability of the man.   Unless Fred
Keck, the pit boss, deceives his appearance greatly, I would
have no hesitation in concluding as a juryman that it would be
very gross carelessness for him to undertake to go down there ;
he is a great deal heavier man than the plaintiff ; I should
think he would require pretty good footing.   The plaintiff is a
much younger man, how active he is I do not know, but it de-
pends a little on the head as well as the feet of a man, and his
experience, as to what is safe.   That which would be reason-
ably safe for one man would be almost certain destruction for
another.   But, simply saying, it looks to the court as though it
was a pretty risky trip for him to take under those circum-
stances, it is for the jury.

Then there is another branch of the case.   While this is
conceded to have been a somewhat perilous way of going up
and down, and we now treat it as though it was the only prac-
ticable way he had—that he had no safer way to go—yet we
have said to you, following the ruling of the Supreme Court in
two cases that went from this court, and which we feel bound
to follow until the Supreme Court changes its ruling, that even
though these elevated steps by which the plaintiff was accus-
tomed to ascend to his work of inspecting the machinery were
insecure and dangerous, though not so obviously dangerous as
to threaten immediate injury, and it was reasonably probable
that the same could be safely used by great caution and skill,
if you further find that the plaintiff was induced by the assur-
ance of the defendant company, or its duly authorized officers,
that a new, properly guarded staircase would be substituted,
to continue the use of said alleged defective steps, and that
defendant did in fact exercise reasonable caution and skill in
the use thereof, and notwithstanding received the injury com-
plained of, by reason of the insufficiency and defect of the steps

and appliances furnished by the defendants, then the plaintiff would be entitled to recover, if there is nothing else in his way.

But the defendant alleges a number of things else in the way that if you find to be true would defeat his recovery. They allege, as I have already stated, that these steps were put there at his special request, for his accommodation, to save him from going so far around, and put there by carpenters who had no authority from the superintendent of the company, and if so, then he took the risk and he cannot recover. But one of the general officers says that seeing them there and learning from the plaintiff himself, or somebody else, that he was using them, he warned and directed him not to use them, telling him that it was dangerous, perhaps saying he would break his neck. Well, if that be the case, and he continued to use them, he took the risk and cannot recover. Plaintiff denies that. It is a question of fact for the jury. Then he alleges that these steps were the way that the company had provided him to get there and that they promised him from time to time, on his complaint that it was not a secure way, to have a staircase put up for him there securely. He alleges that he told Mr Mullen, who, by the defendant's testimony, was simply the time keeper there and who, if it depended on binding the company, would not be a sufficient officer to give notice to, and that Mullen promised to have them fixed, and said he had ordered the lumber. He says he told one of the general officers whose name I do not recollect. He says, though, that he got Mr. Lynch in his engine room and being in a good humor about the engine, he called his attention to this matter and asked for a stairway, and Mr. Lynch promised to have it in a short time. Well, there is no doubt about Mr. Lynch's authority, or about being the proper person to address. Mr. Lynch denies it absolutely. The time keeper would not be a proper party to ask to have this changed, if time keeping was all the business that he had. I do not think it necessary that the party applied to would have had the absolute right to bind the company to do the particular thing, provided the plaintiff had had reasonable ground for believing that the party he applied to was the proper officer, because this is a question that bears, not on the conduct of the defendant, the coke company, but on the conduct of the plaintiff as to whether or not he was guilty of negligence; and if he

applied to a man who apparently was in the exercise of all the authority and superintendence there to have this done, and it was promised to be done, why he might reasonably rest on that promise. But I hardly think that there is evidence that would justify you in finding that he had reasonable cause to believe that either Mr. Keck or Mullen had such authority, because he evidently knew that Mr. Lynch was in general charge, and was the man who employed him as engineer, and who came there and talked to him. On the other hand, it is testified to by officers of the company that the request had been sent from Mr. Lynch, or from some one, for these steps to be put up and that it was referred to a man who was one of the superintendents, Mr. Ramsey, and that he, on investigating it, informed Mr. Keck, the pit boss, that it would not be done; that he deemed it inexpedient, and gave as one of his reasons for deeming it inexpedient that it should not be used for that purpose at all, because the tendency was to keep the engineer from going around on all the work—on the switch, and different things he had to examine, and thus make him neglect his business of inspecting. Now if that be the case, we have already said to you in answer to a point of defendant's counsel, plaintiff cannot recover. But there is a conflict of testimony, and the jury will have to settle it. If you find for the defendant, of course you have no trouble about the question of damages. If you find for the plaintiff, then you come to a further question of amount. . . . .

Counsel for plaintiff respectfully ask the court to charge the jury in this case as follows:

1. If the jury find from the evidence that the cleated steps or staircase over which plaintiff was accustomed to ascend to his work of inspecting the machinery upon the tipple were insecure and dangerous, though not so obviously dangerous as to threaten immediate injury, and it was reasonably probable that the same could be safely used by great caution and skill, and if they further find that the plaintiff was induced by the assurances of the defendant company, or its duly authorized officers, that a new and properly guarded staircase would be substituted, to continue the use of said defective steps, and the plaintiff did in fact exercise requisite caution and skill in the use thereof, and, notwithstanding this, received the injury

complained of, by reason of the insufficiency and defect of the steps and appliances furnished by the defendant, then the plaintiff is entitled to recover.

Answer: On the authority of Patterson v. Pittsburgh etc. R. Co., 76 Pa. 389, and Oak Bridge Coal Co. v. Reed, 5 W. N. 4, this point is affirmed; subject, however, to the qualification that if there was another way for the plaintiff to reach his work of inspecting which was a reasonably safe one, even though it was a hundred yards or more further around, and the plaintiff chose to take the shorter but more dangerous route, the risk was his own and he cannot recover.[1]

The defendant requests the court to charge the jury as follows:

1. That the plaintiff cannot recover in this action: (1) Because the danger of using the coal-chute as a stairway was patent to the plaintiff and fully realized by him as shown by his own testimony, and he must be presumed to have accepted that risk as incident to his employment. (2) Because the plaintiff having testified that he knew the coal-chute was a dangerous way and that it was covered with ice, was reckless and guilty of contributory negligence in attempting to come down in the night time, with a lantern and oil can in his hands without other than a foot-hold.

Answer: The first point is refused. These are questions of fact for the jury to pass upon. We cannot say that the facts are as set forth in this point.[2]

2. It being the uncontradicted testimony that the coal-chute was made into a stairway at the request of, and in the manner directed by the plaintiff himself, he cannot recover for any injury from the use of them, there being no proof of a defect in the construction, nor negligence on the part of defendant in the care of them.

Answer: The second point is refused. I do not understand the evidence on that point to be uncontradicted. I understood the plaintiff himself to deny it. If the fact be as stated in the point, the verdict should be for the defendant.[3]

A rule for a new trial having been discharged, judgment was entered upon the verdict, when the defendant took this appeal, assigning for error:

Arguments.

1. The answer to plaintiff's point.[1]
2, 3. The answers to defendant's points.[2][3]

*Mr. W. F. McCook*, for the appellant:

1. The plaintiff is seeking to recover for an injury resulting from the use of an appliance which he himself furnished, and which, at the time he was hurt, he was using in violation of the orders of his superiors.   Whether the path up the hillside, which he could have used, was more or less dangerous or inconvenient than the way on top of the chute, is aside from the case.   To permit him to pass upon the propriety of the order not to use the latter, would be subversive of all discipline in a company like this.   He was bound either to obey orders, or, if the employment was dangerous in his view, to refuse it.

2. In allowing the case to go to the jury the court relied on Patterson v. Railroad Co., 76 Pa. 389, and Oak Bridge Coal Co. v. Reed, 5 W. N. 3.   The latter case is not an authority here, because the decision was expressly upon the ground that the danger was not obvious and patent to the employee, while in the present case it was so.   In Patterson v. Railroad Co., the employee was requested by his superiors to continue the use of the dangerous implement until it could be· fixed; but no one requested Hart to continue using the cleats, and he knew, eleven months before he was injured, that the company would not put up steps from the boiler house to the tipple.

3. Assuming that Hart's superiors knew he was using the cleats, and that they were dangerous, that fact would not impose liability upon the defendant.   No duty rested upon it to inform him of the danger, for it was obvious to him, and in using the cleats with knowledge of the danger he took upon himself the risk of accidents: Green etc. Pass. Ry. Co. v. Bresmer, 97 Pa. 103.   Moreover he was foolhardy and reckless in his manner of using the cleated way, according to his own testimony.   To let go his hand hold before his foot was safely planted on the cleat, when there was snow on it, and start face foremost down such a declivity as he did, was gross negligence.

*Mr. Thomas Patterson* (with him *Mr. Edward Campbell*), for the appellee:

1. The argument for appellant is based almost entirely upon

questions of fact, which have already been passed upon by the jury and are not now to be considered in this court. The law is well settled that an employee who continues to use a dangerous appliance under an assurance from his employer that the danger shall be remedied, can sustain an action for an injury caused by it: Clark v. Holmes, 6 H. & N. 357; s. c. 7 H. & N. 942; Holmes v. Worthington, 2 F. & F. 533; Ford v. Railroad Co., 110 Mass. 260; Troy v. Railroad Co., 32 Ia. 357; Laning v. Railroad Co., 49 N. Y. 534 (10 Am. Rep. 417); Cooley on Torts, 559; Wood on Master & S. 766; Moak's Underhill on Torts, 61; Patterson v. Railroad Co., 76 Pa. 390; Oak Bridge Coal Co. v. Reed, 5 W. N. 3.

2. This case is not within the principle of the decisions by which employees voluntarily using machinery known to be defective have been refused a recovery on the ground that they assumed the risk, for that principle is so stated as to exclude cases in which there has been a notification to the employer as to the danger, and he had promised to repair: Mansfield Coal & C. Co. v. McEnery, 91 Pa. 185; N. Y. etc. Ry. Co. v. Lyons, 119 Pa. 325. The only remaining question is, whether Hart, in the actual use of the appliances furnished him, used due prudence and caution. This depends, as the court below remarked, on the particular person, his skill, training and ability, and under the authorities is clearly for the jury. A number of cases are of this effect; it is sufficient to cite Penna. R. Co. v. White, 88 Pa. 327.

OPINION, MR. CHIEF JUSTICE PAXSON:

The third specification of error is decisive of this case, and will be alone considered. It is as follows:

" The court erred in not giving defendants an unqualified affirmance of its second point, which point and answer are as follows:

" ' It being the uncontradicted testimony that the coal chute was made into a stairway at the request of, and in the manner directed by the plaintiff himself, he cannot recover for any injury from the use of them; there being no proof of a defect in the construction, or negligence on the part of defendant in the care of them.

" ' Answer: The second point is refused. I do not under-

stand the evidence on that point to be uncontradicted. I understood the plaintiff himself to deny it. If the fact be as stated in the point, the verdict should be for the defendant.' "

The fact was as stated in the point. Mr. Call, Mr. Grindell, and Henry Johnson, testify distinctly that the cleats were nailed on the chute at the request of the plaintiff, to enable him to go up and down more easily. All this, perhaps, would not have justified the affirmance of the point, as what the witnesses said was for the jury; but when we turn to the plaintiff's own testimony we find the following:

Q. What facilities were there for getting up to the tipple when you first took charge of the engines? A. When I first took charge of the engines, there were cleats nailed across the upright posts of the trestle-work. At the upper end of the works they had a trestle-work to climb up. These cleats, I suppose, were from twenty-four to thirty inches apart. It was very difficult to get up there. I had talked about that. It was a very bad place to go up.

Q. Was there any change made, and, if so, what was said and done? A. Some time after that,—I could not say the time,—William Mullen, assistant superintendent, came to me, and asked me if there was some place that they could put up a temporary way to get up; that, as soon as they catched up with their work, they would put a pair of good stairs there.

Q. Was any temporary arrangement put up, and, if so, what was it? A. I told Mr. Mullen I thought there could be a temporary arrangement put up the boiler-chute, running up from the boiler-chute to the trestle-work, and he agreed to do it, and the carpenters went to work, and nailed cleats on the boiler-chute up, I suppose, twenty-five feet, and then there was a ladder run from that up to the top of the trestle.

This renders it perfectly clear that the cleats were nailed on, not only with the knowledge of the plaintiff, but at his request. It was a plan of his own contriving. If it was dangerous, he knew its danger: and, even if we are mistaken in the fact that the plaintiff requested and suggested the arrangement, the danger of using it was patent. He was not obliged to go up and down there, as there was another and safe way provided, though not, perhaps, as convenient. In any view of the case, the plaintiff was not entitled to recover.

Judgment reversed.